# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**Case No.: 8:20-cv-2517**

**GLOBAL GLASS TECHNOLOGIES, INC.**,

                    Plaintiff,

v .

**RESEARCH FRONTIERS INC., GAUZY LTD, and VISION SYSTEMS NORTH AMERICA, INC.**,

                    Defendants

_____/

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

i

**Table of Contents**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................ 1

III.    LEGAL ARGUMENT ....................................................................... 5

  A.    Motion to Dismiss Standard ........................................................ 5

  B.    Argument ...................................................................................... 6

    1.    **Plaintiff fails to specifically allege claims for patent infringement against Defendants.** ..................................................................... 6

    2.    **Plaintiff's patent claims are invalid** ......................................... 10

    3.    **Mandatory Injunctive Relief is not a Cause of Action.** ........................... 15

    4.    **Defendants Are Licensed Under the Asserted Patent.** ........................... 17

IV.    CONCLUSION ................................................................................ 19

## Table of Authorities

### Cases

*Advanced Screenworks, LLC v. Mosher*,
  2020 WL 1188468 (M.D. Fla. Mar. 12, 2020) ................................................... 6, 7, 9

*Alabama v. U.S. Army Corps of Eng'rs*,
  424 F.3d 1117 (11th Cir. 2005) ......................................................... 16, 17

*AlexSam, Inc. v. Aetna, Inc.*,
  2020 WL 5502323, at *11 (D. Conn. Sept. 11, 2020) ............................................. 17

*Alice Corp. Pty. Ltd. V. CLS Bank Intern.*,
  573 U.S. 208 (2014) ..................................................... passim

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) ......................................................... 13, 15

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ........................................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) .............................................................. 5, 6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ...................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ............................................................ 5, 6

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ................................................................. 13, 14

*Blue Water Innovations, LLC v. Fettig*,
  2019 WL 1904589, (S.D. Fla. Mar. 8, 2019) ................................................. 6

*Brandywine Communications Techs., LLC v. T-Mobile USA, Inc.*,
  904 F. Supp. 2d 1260 (M.D. Fla. 2012) ................................................. 7

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ......................................................... 15

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ......................................................... 12

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ................................................................. 14

*Edwards v. Prime, Inc.*,
  602 F.3d 1276, 1291 (11th Cir. 2010) ...................................................... 6

*Embrey v. USAA Cas. Ins. Co.*,
  2010 WL 11601091 (S.D. Fla. Dec. 1, 2010) ............................................... 17

*Glob. Tech Led, LLC v. Every Watt Matters, LLC*,

2016 WL 6682015  (S.D. Fla. May 19, 2016)..........................................................9

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357 (Fed. Cir. 2013) ......................................................................8

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012) ......................................................................7

*In re Richman*,
563 F.2d 1026 (CCPA 1977) .......................................................................14

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ...........................................................16, 17

*Le Roy v. Tatham*,
55 U.S. 156 (1852) .......................................................................................10

*Mayo Collaborative Servs. V. Prometheus Lab. Inc.*,
566 U.S. 66 (2012) ...............................................................................10, 14

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ....................................................................7

*Omega Pats., LLC v. Lear Corp.*,
2008 WL 821886, at *2 (M.D. Fla. Mar. 20, 2008) ...................................2

*Parker v. Flook*,
437 U.S. 584 (1978) .....................................................................................14

*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*,
203 F.3d 790 (Fed. Cir. 2000) ......................................................................8

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
600 F.3d 1334, 1337 (11th Cir. 2010)..........................................................2

*Simio, LLC v. FlexSim Software Prod., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ...........................................................12, 15

*Sinaltrainal v. Coca–Cola Co.*,
578 F.3d 1252, 1261 (11th Cir.2009)............................................................6

*Talbot v. Anderson*,
2015 WL 13297966  (M.D. Fla. Aug. 17, 2015)........................................17

## Statutes

35 U.S.C. § 101...................................................................................12, 13, 15

## Rules

Rule 12(b)(6) ..................................................................................8, 18, 19

Defendants, RESEARCH FRONTIERS INCORPORATED ("RFI"), GAUZY LTD ("Gauzy"), and VISION SYSTEMS NORTH AMERICA, INC. ("Vision System") move to dismiss Plaintiff's Complaint because it fails to properly plead patent infringement claims, and seeks "mandatory injunctive relief" which is not an independent cause of action.  And even if Plaintiff could properly plead a patent infringement claim, such a claim must be dismissed because RFI has a worldwide license to the underlying patent, including the right to grant sublicenses to Gauzy and Vision System.

## I.    INTRODUCTION

The foundation of Plaintiff's complaint is purported violations of certain patent rights, but Plaintiff fails to identify any infringed claim, tie any elements of any claim of the asserted patent to any specific products, and fails to identify what section of the patent law Plaintiff seeks relief under.  Plaintiff's complaint also asserts as Count IV a cause of action for "mandatory injunctive relief," essentially seeking specific performance of a contract.  But "mandatory injunctive relief" is not a separate cause of action to pursue.  Worse still, Plaintiff's predecessor-in-interest (and original inventor of the asserted patent) previously granted RFI an irrevocable worldwide license, with the right to grant sublicenses, to the asserted patent.  As such, Plaintiff's complaint must be dismissed.

## II.   BACKGROUND

On October 27, 2020, Plaintiff filed its complaint against the Defendants seeking relief with respect to claims alleging infringement, inducement of patent

infringement, breach of contract, quantum meruit relief, unjust enrichment injunctive relief, and declaratory judgment ("Complaint").

Jay Moskowitz, the alleged inventor of United States Patent Registration Nos. 7,800,812; 8,098,421; 8,120,839; 8,792,154; 9,261,752; and 9,658,509 (collectively known as "SCSC's SPD Patents"), assigned SCSC's SPD Patents to his company nonparty SPD Control Systems Corporations ("SCSC").

SPD is an acronym for Suspended Particle Device—small light-absorbing microscopic particles. SPD can be used to cause glass to become more opaque to transparent. Specifically, when an SPD or light valve is controlled via electricity between a glass, it will cause a window to become opaque or transparent. When electricity is applied to the SPD, the SPD nanoparticles line up in a straight line and allow light to flow through. When the electricity is turned off, the SPD move into random patterns and block light allowing the window to appear opaque.

The Asserted Patent[1], namely Patent number 8,792,154 ("154 Patent") "relates to a wirelessly enabled apparatus and associated mesh networking software installed in large arrays in order to dynamically control the 'skin' of residential and commercial buildings throughout the day in order to absorb or

---

[1] The '154 Patent is not attached to the Complaint, but is attached to this Motion as Exhibit A. The Court may consider the '154 Patent because it is central to Plaintiff's claims, and should not be subjected to any authenticity challenge. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.") The Court may also take judicial notice of Exhibit A, as it is a copy of a U.S. Patent downloaded from the U.S. Patent and Trademark Office. *See Omega Pats., LLC v. Lear Corp.*, 2008 WL 821886, at *2 (M.D. Fla. Mar. 20, 2008).

reflect sunlight in such a manner as to dramatically reduce the energy consumption of such buildings." *See* Patent 8,792,154. The '154 Patent relies on a "Scalable Controller" which uses a microprocessor to automate the opacity or clarity of SPD in windows real-time.

The '154 Patent explains that SPD technology is not new. *See* '154 Patent at 1:17-53. The '154 Patent further notes that it is conventional to install SPDs into glass to finely control the amount of light allowed through the glass. *Id*. at 1:66-2:2. The patent goes on to explain that manual control of such SPDs is acceptable, but would benefit from being more scalable:

> But a device envisioned by Malvino, while suitable for the manual control of a small number of co-located windows, is not scalable nor does it provide the automated intelligence to actively and dynamically control environments of more than a few windows such as in an automobile, marine vehicle, train or aircraft, to as much as a residential or commercial building or a skyscraper of such SPD windows.

*Id*. at 2:12. The '154 explains the advantages of the purported invention:

> The invention relates to a wirelessly enabled apparatus and associated mesh networking software installed in large arrays in order to dynamically control the "skin" of residential and commercial buildings throughout the day in order to absorb or reflect sunlight in such a manner as to dramatically reduce the energy consumption of such buildings

*Id*. at 2:61-66.

On October 25, 2005, SCSC and RFI entered into a license agreement, with RFI licensing certain of its technology to SCSC. Upon termination of that license, SCSC would license to RFI any of SCSC's technology, including the '154 Patent. A copy of the 2005 Agreement is attached as Exhibit B. As Plaintiff explains in ¶ 22 of its Complaint, Plaintiff and RFI entered into an agreement on December 19, 2014

3

addressing royalties to be shared between the parties.  That agreement is attached to Plaintiff's Complaint at Exhibit B, and explicitly references the termination of the 2005 Agreement.  *See* [Dkt. 1-3] at 1 ("as of December 31, 2014 the License Agreement effective as of October 25, 2005, as amended, between [Plaintiff and RFI] shall terminate.").  As such, the 2005 Agreement is central to Plaintiff's claim and is proper for the Court to consider in addressing this motion to dismiss.  According to its terms, on termination of the 2005 Agreement, SCSC granted the following license to RFI:

> grant to LICENSOR a nonexclusive, royalty-free, irrevocable, worldwide license with the right to grant sublicenses to others to utilize all technical information, improvements and/or modifications (whether or not the subject of patents or pending patent applications) developed or invented by or on behalf of LICENSEE and/or its sublicensees, subcontractors, or agents hereunder through the date of such termination or expiration of this Agreement relating to Light Valves, or Licensed Products, and upon such termination or expiration, LICENSEE shall provide LICENSOR in reasonable detail complete information regarding such technical information, improvements and/or modifications.  The foregoing license shall be self-effectuating, but LICENSEE agrees upon written notice by LICENSOR at any time hereafter to deliver to LICENSOR within 30 days of such notice any document or other instrument reasonably requested by LICENSOR to convey such license rights to LICENSOR such as, by way of example, confirmations or instruments of conveyance or assignment.

Exhibit B at 10.4(3)(B).

RFI and SCSC entered into a licensing agreement with Daimler AG.  *See* [Dkt. 1-2].  RFI and SCSC agreed to a revenue split of the revenue received from the Daimler license.  Through that agreement, royalties are received by RFI, and then RFI distributes SCSC's share to SCSC.

SCSC entered into a separate agreement with Plaintiff to secure funding relating to SCSC's business. It appears through that relationship that Plaintiff took certain security interests in SCSC's assets, and may have foreclosed on those interests. The heart of this dispute appears to be a dispute between Plaintiff and SCSC relating to where RFI should direct the nominal royalty payments RFI receives from Daimler that belong to SCSC. RFI attempted to negotiate with Plaintiff and SCSC to resolve where those royalties should be deposited. While SCSC agreed to the final resolution, Plaintiff did not, and instead now seeks to recast its dispute with SCSC as to where the royalties should be deposited into some kind of patent infringement case. RFI is simply a stakeholder holding funds that either belong to SCSC or Plaintiff, and was looking for appropriate clarification as to which entity to pay these funds to.

## III.   LEGAL ARGUMENT

### A.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a motion to dismiss, the court should take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The court is not, "however, required to accept the labels and legal conclusions in the complaint as true." *Id.* (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

**B.    Argument**

1.    **Plaintiff fails to specifically allege claims for patent infringement against Defendants.**

Plaintiff's patent related claims should be dismissed because each claim fails to sufficiently allege the elements of patent infringement. "An allegation of direct patent infringement is 'insufficient under *Twombly* and *Iqbal* if it simply recites some of the elements of a representative claim and then describes generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements.'" *Advanced Screenworks, LLC v. Mosher*, 2020 WL 1188468, at *3 (M.D. Fla. Mar. 12, 2020) (quoting *Blue Water Innovations, LLC v. Fettig*, 2019 WL 1904589, *2 (S.D. Fla. Mar. 8, 2019)). *See also Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (dismissing with prejudice a complaint that "does not sufficiently identify, for example, by photograph or name, any of the particular machines that allegedly infringe other than by broad functional language.").

In Count VI, Plaintiff alleges that RFI induced Gauzy and Vision Systems to infringe the '154 Patent.   However, in order to make a sufficient claim for inducement to infringe, Plaintiff must claim an underlying act of direct infringement.  *See Brandywine Communications Techs., LLC v. T-Mobile USA, Inc.,* 904 F. Supp. 2d 1260, 1266 (M.D. Fla. 2012)("Specifically, to state a claim for induced infringement, a plaintiff must affirmatively plead 'facts plausibly showing that [Defendants] specifically intended their customers to infringe the [patent] and knew that the customer's acts constituted infringement.' ")(quoting *In re Bill of Lading,* 681 F.3d 1323, 1350–51 (Fed. Cir. 2012)).

Plaintiff has not done as much.  Plaintiff has only alleged that RFI "without authorization of Global Glass or, previously SCSC, has granted licenses and sublicenses of Global Glass's SPD Patents to other third parties."  Complaint at ¶ 96.   Plaintiff further alleged broadly that "[u]pon information and belief, Defendants Gauzy and Vision Systems are directly infringing Global Glass's SPD Patents."  Complaint at ¶ 98.  Plaintiff does not further explain how Gauzy or Vision Systems are infringing on Plaintiff's '154 Patent.  *See* Complaint at ¶¶ 93-107.  Thus, Count VI is insufficiently pled and should be dismissed.  *See Advanced Screenworks,* 2020 WL 1188468, at *4 (M.D. Fla. Mar. 12, 2020) (citing *Nalco Co. v. Chem-Mod, LLC,* 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

In Count VII, Plaintiff alleges a claim of direct patent infringement against Gauzy.  In order to state a sufficient claim for patent infringement, a plaintiff must plead five elements of a patent infringement claim, that is (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed,

(iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013)  (citing *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000)).

Plaintiff's claim of direct infringement states that "Gauzy has been and still is infringing the SPD Patents specifically the 154 Patent, by making, selling, and using a product entitled SPD Controllers."  Complaint at ¶ 109.  Plaintiff simply concludes that "Gauzy's product infringes on the patented invention by controlling the opacity of SPD devices, including dimming and fading control for tunable shading, for various uses and installations, including on automotive, planes, trains, boats, and skylights."  Complaint at ¶ 110.  Notably, Plaintiff has failed to allege what sections of the patent law has been invoked. *See Hall*, 705 F. 3d at 1362.

Similarly, in Count VIII, Plaintiff alleges a claim of direct infringement against Vision Systems.  Plaintiff alleges that "Vision Systems has been and is still infringing the SPD Patents, specifically the 154 Patent, by making, selling, and using a product entitled Electronically Dimmable Windows."  Complaint at ¶ 116. Plaintiff explains that "Vision System's product infringes on the patented invention by controlling the opacity of SPD devices, including dimming and fading control for tunable shading, for various uses and installations, including automotive, planes, trains, boats, and skylights."  Complaint at ¶ 117.  Vision Systems is unaware how its product allegedly infringes Plaintiff's '154 Patent.

Further, Plaintiff has further failed to include what provision of the patent statute Plaintiff is invoking.

Count VII fails to specifically place Gauzy on notice as to what activity is allegedly infringing Plaintiff's '154 Patent. *See Glob. Tech Led, LLC v. Every Watt Matters, LLC*, 2016 WL 6682015, at *3 (S.D. Fla. May 19, 2016) (holding that the plaintiffs claim of direct patent infringement fail under *Twombly/Iqbal* standards because although the allegations "generally describe" the accused products and refer to the alleged infringed patent claims, the claims do not "sufficiently tie any specific operation to a patent claim, relying instead on the 'bare assertion' that Defendants infringe through the 'making, using, selling, or offering for sale, one or more of the' accused products."). "[T]he First Amended Complaint fails to describe how the [alleged infringing item] infringes on any of the elements of these claims, and therefore is insufficient to give [defendant] fair notice." *Advanced Screenworks*, 2020 WL 1188468, at *3 (finding specifically that the complaint was insufficient where pleadings simply allege that defendant directly infringed several patent claims by "among other things, making, using, offering to sell, and selling in the United States without a license. A 'screen clipping system' for the screening of windows, doors, pool cages, and patios, including the Screening Buddy"). Here, Plaintiff's patent-related claims fail to describe how the Defendants' infringing items actually infringe on Plaintiff's patents. Thus, these claims are insufficient and should be dismissed.

2.   **Plaintiff's patent claims are invalid**

The '154 Patent is directed to ineligible subject matter under *Alice Corp. Pty. Ltd. V. CLS Bank Intern.*, 573 U.S. 208 (2014) and 35 U.S.C. § 101. Section 101 defines eligible subject matter for patent protection and contains an implicit exception for "laws of natural, phenomena, and abstract ideas." "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right. Nor can an exclusive right exist to a new power, should one be discovered in addition to those already known." *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852).  "Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."  *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

 "[T]he Court must first determine whether the claims at issue are directed to a patent-ineligible concept.  If so, the Court then asks whether the claim's elements, considered both individually and 'as an ordered combination,' 'transform the nature of the claim' into a patent-eligible application." *Alice Corp.* 573 U.S. at 2350 (quoting *Mayo Collaborative Servs. V. Prometheus Lab. Inc.*, 566 U.S. 66, 78 (2012)).  In step two of the analysis, the court searches for an "inventive concept" or "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 566 U.S. at 1295).

Plaintiff's '154 Patent is directed at an abstract idea that merely uses generic computer processing to make the process faster.  As noted above, Plaintiff has not

10

identified any specific claims of the '154 Patent which are allegedly infringed, thus Defendants and the Court are left to guess which claims of the '154 Patent are actually at issue.  Looking at Claim 1 as representative, it simply provides:

> 1. A controller controlling the opacity of at least one SPD, wherein a fixed intensity light source and photo-detector combination is used to determine the absolute opacity of the at least one SPD.

'154 Patent, Exhibit A at 28:5—8.

Plaintiff has not and does not claim to have invented the SPDs.  *See* '154 Patent, "Background of the Invention," 1:15-2:57.  As shown in Claim 1, the alleged invention relates only to a controller for controlling at least one SPD.  But as the '154 Patent makes clear, controlling SPDs was a conventional activity.  *See e.g. Id*. at 2:2-4.  What the '154 Patent purports to protect is providing "automated intelligence" to control multiple SPD devices.  *Id*. at 2:7-13.

The '154 Patent was prosecuted before the *Alice* decision.  While patents were granted for automating activities prior to *Alice*, such patents have regularly been invalidated for lack of eligibility under §101 since the *Alice* framework was enacted.  Simply automating well-known activities no longer qualifies for patent protection.  *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)("the use of a computer in an otherwise patent-ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)("Simply adding a "computer aided" limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible.").

11

Plaintiff has attempted to patent a computer coded device that controls one or several SPDs using an algorithm. *See* '154 Patent. The device does not purport to invent brand new technology. *See* '154 Patent, "Background of the Invention," 1:15-2:57. Nor does the device purport to improve the functionality of a computer. *See, e.g., Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1362 (Fed. Cir. 2020). Instead, the device provides an interface to an external system that takes the algorithm and executes it.

As Plaintiff explains "the 154 Patent lists the following claims: [a] controller controlling the opacity of at least one SPD, wherein a fixed intensity light source and photo-detector combination is used to determine the absolute opacity of the at least one SPD." Complaint at ¶ 14(a). This appears to be nothing more than a copy and paste of Claim 1 of the '154 Patent. The controller used in the '154 Patent is simply an abstract calculation or algorithm regarding the opacity of one or several SPDs together. *See* '154 Patent, claims, 25:5-26:60. "Claiming a result that involves application of a natural law without limiting the claim to particular methods of achieving the result runs headlong into the very problem repeatedly identified by the Supreme Court in its cases shaping eligibility analysis." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1295 (Fed. Cir. 2020).

Further, the controller used in the '154 Patent is akin to the abstract idea of a person manually determining and changing the opacity of an SPDs based on the intensity of a light source. Manual control of SPDs is admitted to be a known use of SPDs. *See* '154 patent, "Background of the Invention," 1:15-2:57. Merely implementing the known manual control with an algorithm is an ineligible

abstract idea.  By the patent's own admission, manually regulating SPDs was well-known.  SPD's purported improvement was to use conventional controllers to control this otherwise manual activity.  This is precisely the type of activity that is not patent eligible under 35 U.S.C. § 101.

In *Alice*, the patents at issue sought to disclose schemes to manage certain forms of financial risk.  *Alice,* 573 U.S.  at 2352.  The court explained:

> Petitioner's claims involve a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk.  The intermediary creates and updates "shadow" records to reflect the value of each party's actual accounts held at 'exchange institutions,' thereby permitting only those transactions for which the parties have sufficient resources.  At the end of each day, the intermediary issues irrevocable instructions to the exchange institutions to carry out the permitted transactions.

Similarly, in *Bilski v. Kappos*, 561 U.S. 593, 609-10 (2010), the Supreme Court held that the plaintiffs' "claims are not patentable processes because they are attempts to patent abstract ideas."  Namely, plaintiffs attempt to patent the process of hedging.  *Id.* (explaining that "[t]hese claims attempt to patent the use of the abstract idea of hedging risk in the energy market and then instruct the use of well-known random analysis techniques to help establish some of the inputs into the equation").  The Court noted that the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding 'insignificant postsolution activity."  *Id.* at 610-11 (quoting *Diamond v. Diehr*, 450 U.S. 175, 191-192 (1981)).

In *Parker v. Flook*, 437 U.S. 584 (1978) the Supreme Court held that Respondent's application was ineligible where "Respondent's application simply provides a new and presumably better method for calculating alarm limit values."

*Parker v. Flook*, 437 U.S. 584, 594–95 (1978). "As the Court of Customs and Patent Appeals has explained, 'if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory.'" *Id.* (*In re Richman*, 563 F.2d 1026, 1030 (CCPA 1977)). "But it held that simply implementing a mathematical principle on a physical machine, namely, a computer, was not a patentable application of that principle." *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (2012).

All of the claims of the '154 patent are directed to an abstract idea of using an algorithm to determine and control the opacity of one or several SPDs together.

In the second step in *Alice*, the court "asks whether the claim's elements, considered both individually and 'as an ordered combination,' 'transform the nature of the claim' into a patent-eligible application." *Alice Corp.* 573 U.S. at 2350. Here, the claims elements are similar to those in *Parker* and *Bilski*. Each of the claims in the '154 Patent utilizes the controller with at least one SPD to determine and control the opacity of the SPD and either connect it to an interface with multiple other SPDs or utilize other sources such as geographical region and sunlight to adjust the opacity. *See* '154 patent, claims, 25:5-26:60. Thus, the controller is no more than a generic computer component used to control various SPDs at once based on an abstract algorithm.

"'[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept' required to cross the line into eligibility." *Am.*

14

*Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1299 (Fed. Cir. 2020) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

Plaintiff's '154 Patent is simply attempting to implement an algorithm or mathematical principle using a controller that controls the opacity of at least one SPD.  The claims in '154 Patent do not contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *See, e.g.,* *Simio*, 983 F.3d at 1364 (affirming the lower court's dismissal as the patent asserted is directed to an abstract idea "and lacking an inventive concept, any meaningful *application* of this idea, sufficient to save the claim's eligibility.").

Further, claim limitations that implement an abstract idea using merely "generic computer component" or "well-understood routine, conventional activities" are not inventive.  *Alice*, 573 U.S. at 221-226. All of the claim limitations in the '154 patent implement the abstract algorithm with generic computer components that were well-understood, routine and conventional at the of the patent, such as generic sensors, controllers, network interfaces, data, lookup tables, etc. *See* '154 patent, claims, 25:5-26:60.  Thus, the claims of the '154 patent fail to recite an inventive concept.

3.     **Mandatory Injunctive Relief is not a Cause of Action.**

Plaintiff avers a cause of action for mandatory injunctive relief in Count IV. Plaintiff asserts that pursuant to the Daimler Royalty Splitting Agreement, RFI agreed to pay SCSC fifty percent (50%) of any royalties received by RFI under the Daimler License.  Plaintiff further states that per the Assignment Agreement, Plaintiff is the owner of the technology subject to the Daimler License and Daimler

Royalty Splitting Agreement.  Plaintiff sent a notice of transfer to RFI on January 29, 2017, thus, Plaintiff alleges that RFI is on notice of its ownership and obligation to pay royalties to Plaintiff.  Plaintiff seeks to have the Court enter an order granting mandatory injunctive relief requiring that RFI be required to pay Plaintiff fifty percent (50%) of the Daimler royalties received by RFI from the date of the Complaint forward.

"There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)) "A request for an injunction seeks a remedy rather than stating a separate claim for relief." *Embrey v. USAA Cas. Ins. Co.*, 2010 WL 11601091, at *5 (S.D. Fla. Dec. 1, 2010).  "[A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Klay* , 376 F.3d at 1098.

Plaintiff does not assert a separate cause of action for the claim of mandatory injunctive relief.  *See Talbot v. Anderson*, 2015 WL 13297966, at *7 (M.D. Fla. Aug. 17, 2015)("Injunctive relief may be a remedy for certain contract or tort claims, but it does not represent a separate and independent cause of action.")(citing *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005))).  In Plaintiff's claim for mandatory injunctive relief, it only asks the court to order such relief

because Plaintiff would suffer irreparable harm, although no explanation of such harm is provided.  Without asserting a proper cause of action, Plaintiff's claim for injunctive relief is does not withstand scrutiny under Fed. R. Civ. P. 12(b)(6) .  *See Alabama*, 424 F.3d at 1127 and *Klay*, 376 F.3d at 1097.  Thus, Count IV, seeking mandatory injunctive relief, should be dismissed.

4.   **Defendants Are Licensed Under the Asserted Patent**.

It is proper for the Court to dismiss Plaintiff's Complaint because Defendants have an explicit license to the Asserted Patent.  *See AlexSam, Inc. v. Aetna, Inc.*, 2020 WL 5502323, at *11 (D. Conn. Sept. 11, 2020).  In 2005, SCSC (the original owner of the Asserted Patent) and RFI entered into a licensing agreement.  That 2005 Agreement provided that, upon termination, SCSC granted to RFI a "nonexclusive, royalty-free, irrevocable, worldwide license with the right to grant sublicenses to others to utilize all technical information, improvements and/or modifications (whether or not the subject of patents or pending patent applications) developed or invented by or on behalf of [SCSC] and/or its sublicensees, subcontractors, or agents hereunder through the date of such termination or expiration of this Agreement relating to Light Valves, or Licensed Products…"  *See* Exhibit B at 10.4(3).  That license required no further work on behalf of the parties, and by its own terms is self-effectuating.  *Id*. ("The foregoing license shall be self-effectuating…")

17

On December 19, 2014 – 2 years before Plaintiff purports to have obtained rights to the Asserted Patent[2] – SCSI and RFI agreed to terminate the 2005 Agreement.  *See* [Dkt. 1-3] at 1 ("pursuant to SCSC's notice of termination, as of December 31, 2014 the License Agreement effective as of October 25, 2005, as amended, between Research Frontiers, Inc and SPD Control Systems Corp (the 'SPD Controller License') shall terminate.").  As such, as of December 31, 2014 upon the termination of the SPD Controller License (referred to herein as the 2005 Agreement), RFI immediately obtained a worldwide, royalty-free, sublicensable right to the '154 Patent and any technology embodied therein.  RFI is thus able to use the technology of the '154 Patent and license it to its customers Gauzy and Vision Systems.

Plaintiff appears to implicitly recognize this reality.  Notably absent from Plaintiff's Complaint is any allegation that Defendants do not have a license to use the technology of the '154 Patent.  Defendants have such a license.  Thus, any attempt by Plaintiff to plead a patent infringement claim (or a claim based on such purported infringement) must fail because Defendants have had a license to use the Asserted Patent since at least December 31, 2014.

---

[2] Plaintiff claims an ownership interest in the '154 Patent through a purported assignment agreement attached as Exhibit D to its Complaint.  That assignment agreement is not signed by any officer of SCSC, the original owner of the '154 Patent.  Instead, Plaintiff's principal, John Lloyd, signed the agreement both on behalf of Plaintiff and on behalf of SCSC as SCSC's purported "authorized agent" through a power of attorney.  While the Court must take Plaintiff's allegations as true for purposes of resolving this Motion, Plaintiff's purported ownership interest in the '154 Patent appears suspect.

## IV.   CONCLUSION

Defendants respectfully request this Court enter an Order: (1) dismissing the Complaint; and (2) granting any further relief this Court deems fair and proper.

DATED this 16th day of April, 2021.

*/s/ Woodrow H Pollack*
Woodrow H. Pollack
Florida Bar No. 26802
Shutts & Bowen, LLP
4301 W. Boy Scout Blvd.
Suite 300
Tampa, FL 33607
(813) 463-4894
wpollack@shutts.com
*Counsel for Defendants*

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on <u>April 16, 2021</u> a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H Pollack*
Woodrow H. Pollack

19