IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GLOBAL GLASS TECHNOLOGIES, INC.,**
**Plaintiff,**
**v.**

**Case No.: 8:20-cv-2517**

**RESEARCH FRONTIERS INC. and GAUZY LTD,**

**Defendants**

______________________________/

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P.11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER**

Defendants, RESEARCH FRONTIERS INC. ("RFI") and GAUZY LTD ("Gauzy"), (collectively known as "Defendants"), respectfully request that this Court impose sanctions against Plaintiff, Global Glass Technologies, Inc. ("GGT"), and its legal counsel, for pursuing and maintaining frivolous claims. Plaintiff failed to conduct an adequate pre-suit investigation prior to pursuing either its patent claims or its contract claims. Plaintiff has been given ample opportunity to rectify its burdensome behavior but has instead multiplied these proceedings. Rule 11 and 28 U.S.C. § 1927[1] require more and are designed to limit precisely the type of burdensome behavior Plaintiff and its counsel have engaged in.

## I. INTRODUCTION

[1] Defendants are also entitled to their fees under the patent law's exceptional case standard, but are presently proceeding under Rule 11 and 28 U.S.C. § 1927 because the Court has stayed the patent claims. *See* 35 U.S.C. § 285. *See also* [Dkt. 106].

Plaintiff's counsel are serial litigants in this Court who regularly pursue claims with no underpinning basis. Courts in this district have properly sanctioned them for exactly the same type of behavior they have exhibited in this case. *See GS Holistic, LLC v. Brother Pastor, LLC*, 2023 WL 4082027 at *5 (M.D. Fla June 20, 2023) (J. Covington). In the past 9 months, Ms. Penalta has filed over **100 cases** in this district. Chief Judge Corrigan, addressing Ms. Penalta's inability to follow our local rules, has said "Enough is enough," and dismissed a number of her filings. *See GS Holistic, LLC v. Kinder Combs 7 LLC*, 2023 WL 5104701, at *1 (M.D. Fla. Aug. 9, 2023). Mr. Ticktin, her boss, presumably oversees all this activity, and has pursued claims that earned sanctions garnering national attention. *See Trump v. Clinton*, Case No. 22-14102 (S.D. Fla. Jan. 19, 2023) (J. Middlebrooks) (attached as **Exhibit A**). Indeed, Judge Middlebrooks, addressing a complaint signed by Mr. Ticktin, spoke clearly: "This case should never have been brought … No reasonable lawyer would have filed it." Exhibit A at page 1. Judge Covington recently said the same thing. *See G.S. Holistic, LLC v. Brother Pastor*, Case No. 8:22-cv-2179 (M.D. Fla. Sept. 5, 2023) [Dkt. 42] (attached as **Exhibit A-1**) at 7-8 ("Although GS Holistic and its counsel never should have filed this trademark infringement action in the first place, they did. And they continued litigating it actively for months after Defendants advised GS Holistic of the lack of factual or legal foundation for the case.") The case *sub judice* should never have been brought, and no reasonable lawyer would have filed it.

**1. Plaintiff's Patent Infringement Claims**

Non-party SPD Control Systems Corporation ("SCSC") was the original owner of U.S. Patent Nos. 7,800,812 ("the '812 Patent"), 8,792,154 ("the '154 Patent"), and 9,658,509 ("the '509 Patent") (collectively the "Patents-in-Suit"). Plaintiff has asserted the Patents-in-Suit here but did so without doing any factual due diligence beforehand. Under Plaintiff's theory, Gauzy makes some product that Plaintiff thinks might infringe one of the Asserted Patents. But Plaintiff has never once been able to identify any such product, and indeed conducted no pre-suit investigation to see whether any of Gauzy's products practice any of the Patents-in-Suit's claims. Nor do Plaintiff's claims against RFI fare any better, as Plaintiff only asserts that RFI induced Gauzy into purportedly infringing the Patents-in-Suit. But again, Plaintiff is unable to identify any product that has ever been made that reads on all elements of any asserted claim. More importantly for this motion, Plaintiff admits in writing during discovery that it conducted absolutely no pre-suit analysis or diligence into any product made by Gauzy to determine whether there was a reasonable basis to pursue infringement. Simply stated, there isn't a reasonable basis, and Rule 11 sanctions are required.

**2. Plaintiff's Contract Claims**

Plaintiff has never entered into any agreement directly with RFI. Instead, Plaintiff recognizes that RFI and non-party SCSC had an agreement, called the **2014 Letter Agreement**, to share the nominal royalties that are generated by a license agreement among RFI, SCSC, and Daimler AG, called the **Daimler License**. Plaintiff claims that RFI's failure to pay Plaintiff the royalties due to SCSC under the 2014 Letter Agreement is a breach of contract. *See* Second Amended Complaint

at ¶ 53. But if Plaintiff had adequately investigated its contract claims, it would never have brought this suit as there simply is no merit to them. Plaintiff never obtained SCSC's contractual rights, and specifically never obtained SCSC's rights under the 2014 Letter Agreement. Rule 11 sanctions are required here as well for this utter failure to properly investigate its claims.

## II. LEGAL STANDARD

The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly, meritless maneuvers. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). Under Rule 11(b), sanctions are proper when a party (1) files a pleading that has no factual bases; (2) files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to exchange existing law; or (3) files a pleading in bad faith for an improper purpose. *See Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "A violation of any one of these [Rule 11(b)] requirements is sufficient to support a motion for sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1312 (11th Cir. 2010).

Rule 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into the actual and legal basis of a claim prior to filing suit. *See Worldwide Primates,* 87 F.3d at 1255. When presented with a motion for Rule 11 sanctions, the court "first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he

would have been aware had he made a reasonable inquiry." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 2015 WL 235433, at *8 (S.D. Fla. Jan. 16, 2015), aff'd in part, vacated in part, 2017 WL 908187 (11th Cir. Mar. 8, 2017), opinion corrected and superseded, 686 F. App'x 823 (11th Cir. 2017), and aff'd in part, vacated in part, remanded, 686 F. App'x 823 (11th Cir. 2017) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995)). "If the attorney failed to make a reasonable inquiry, then the court **must** impose sanctions despite the attorney's good faith belief that the claims were sound." *Jones*, 49 F.3d at 695 (emphasis added).

Concerning patent claims, the Federal Circuit has "interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement. *PPS Data, LLC v. Athenahealth, Inc.*, 2012 WL 601208, at *1 (M.D. Fla. Feb. 23, 2012) (citing *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004)). "In other words, in this context, Rule 11 requires a two-step pre-filing analysis: (1) an investigation into the legal basis of the claim of patent infringement (i.e., a pre-filing 'claim interpretation analysis'); and (2) a fact-intensive comparison of the accused product and the asserted claim(s)." *Id.* As such, Rule 11 sanctions are justified in patent cases where the claims alleged are neither well-founded nor the subject of a reasonable inquiry. *See F&G Research, Inc. v. Google Inc.,* 2007 WL 2774031, at *12 (S.D. Fla. Sept. 21, 2007) (citing *View Engineering, Inc. v. Robotic Vision Sys., Inc.* 208 F.3d 981, 985 n.4 (Fed. Cir. 2000). In patent cases, attorneys are charged with the duty of performing an adequate infringement analysis before filing suit to assure the complaint is well-founded

and that the allegations of infringement and factual contentions have evidentiary support. *See Q-Pharma*, 360 F.3d at 1295; *see also Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002). "Rule 11 [also] requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims." *Antonious*, 275 F.3d at 1073-74. "An attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the pre-filing investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." *Id.* at 1074.

"At a minimum, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe." *Antonious*, 275 F.3d at 1075. Mere speculation about the commercial activity of a potential competitor does not satisfy an accuser's pre-filing obligations. *See e.g., Kilopass Tech. v. Sidsense v. Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013) (Federal Circuit approved of the lower court "drawing an inference of bad faith from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit" and considering "failure to conduct an adequate pre-suit investigation" as "indicative of bad faith").

## III. ARGUMENT

### A. Plaintiff Did Not Conduct a Reasonable Pre-Suit Investigation into Its Purported Patent Claims

Given the sheer volume of cases filed by Plaintiff's counsel over the past year, it is not surprising that the merits of Plaintiff's infringement claims were

never reasonably investigated. In fact, Plaintiff admitted through its interrogatory response that absolutely no pre-filing investigation was done against either RFI or Gauzy. *See* **Exhibit B**, Plaintiff's Response to 1st Interrogatories, No. 2. Plaintiff's patent claims fail for 2 separate, but individually sanctionable reasons. First, Plaintiff did not conduct any factual analysis interpreting any claim of any asserted patent against any specific product of any defendant. Second, Plaintiff did not conduct a proper factual investigation into the rights it purportedly has, and the licenses previously granted to RFI. A reasonable investigation would have analyzed these issues before advising or assisting a client in litigation and Plaintiff's counsel's failure to do so burdens the Court and unsuspecting defendants with having to devote significant resources to frivolous litigation.

**Plaintiff did not do a patent pre-suit investigation**

Plaintiff's initial demand letters to RFI and Gauzy did not identify any particular product or service, or any particular claim of any particular patent that Plaintiff supposed believed was infringed. *See* [Dkt. 1-6], [Dkt. 1-7]. It became clear through this litigation that Plaintiff never once investigated any particular product and never prepared any pre-suit claim chart comparing any patent claim to any product supposedly at issue here. Federal Circuit precedent requires Plaintiff be sanctioned for this failing. *See Antonious*, 275 F.3d at 1072.

The asserted patents relate to systems for controlling multiple SPD devices using a particular network. RFI does not manufacture any products itself, and Gauzy does not manufacture any such controllers. So, Defendants knew from the outset that, even putting aside RFI's worldwide license (addressed below), they

could not possibly be liable for patent infringement relating to the Patents-in-Suit. Thus, Defendants' discovery sought to determine what factual basis Plaintiff could possibly have to pursue such claims. As discovery showed, Plaintiff simply had none.

According to Plaintiff's own discovery responses, the only recent pre-suit infringement analysis appears to have been an analysis conducted in 2019 of potential infringement of the '154 Patent by non-party Vision Systems, Inc., who is no longer a party to this lawsuit. *See* **Exhibit C**. As it relates to RFI or Gauzy, Plaintiff acknowledged in its Answers to Defendants' First Set of Interrogatories that the only pre-suit infringement chart relating to any of its allegations of infringement against RFI was created "on or around September of 2006."[2] *See* Exhibit B, Plaintiff's Answers to Defendants First Set of Interrogatories. Defendants requested this purported claim chart in discovery, but Plaintiff did not provide it. Instead, Plaintiff provided presumably a printout of this purported claim chart as an attachment to its opposition to Defendants' motion to remove the patent claims from this case. *See* [Dkt. 103-3]. But that document is no savior for Plaintiff, as it does not go through the entirety of any claim language of any asserted claim and is only directed to a single screenshot of an RFI product. *See* [Dkt. 103-3] at 14. And no RFI product is accused of direct infringement here. Simply stated, the document does not identify a single Gauzy product that

[2] Plaintiff's statement that the chart was created around 2006 (17 years ago) must be a mistake. The '154 Patent did not issue until 2014 and the excerpt Plaintiff submitted at [Dkt. 103-3] cites Mercedes cars from 2014. *See* [Dkt. 103-3] at 14.

purportedly practices each element of any specific claim of any specific patent.

Plaintiff further explained that this infringement chart "was given to John Lloyd by the creator of the patents at issue in this litigation," and that "Mr. Lloyd is unsure, but he believes that Jay Moskowitz created the chart." Exhibit B, Plaintiff's Answers to Defendants First Set of Interrogatories. As such, the only support Plaintiff has for its patent infringement claims is a claim chart that was created by an unknown source who is not an attorney, that is not directed to any claim at issue in this case. And confirming sanctions are warranted, the supposed claim chart does not even identify Gauzy, the only party accused of direct patent infringement. Nor is it proper for Plaintiff's counsel to rely solely on an infringement chart that was prepared by a non-attorney party. *See* Antonious, 275 F.3d at 1073-74 (Attorney's "may not rely solely on the client's lay opinion that the accused device infringes the patent."). Plaintiff had an obligation to investigate potential claims of patent infringement before bringing them and Plaintiff did not do so. Plaintiff has not satisfied its duty to perform a reasonable inquiry.

Plaintiff itself admits it does not know any reasonable basis to assert infringement:

> THE COURT: You're not helping me there. Give me
> specific facts as to what actions the defense is infringing.
> * * *
> THE COURT: Let me interrupt you. I'm fully aware
> of that. So you say Gauzy is using it. What customer are
> they using it with and how are they infringing?
> MR. TICKTIN: **<u>I don't know that yet</u>**. I mean that is
> what we need to have the discovery for. We understand --
> THE COURT: But I don't understand then how are you
> bringing suit if you have no idea of any infringement?
> * * *

> There's been no articulation to date in any specific
> end use customer that would be utilizing licenses that were
> not approved by the plaintiff. So that is troublesome for
> me given how this suit was initiated to begin with.

[Dkt. 100], 2023-02-06 Discovery Hearing at 5-17 (emphasis added). A party cannot pursue a patent claim without knowing what product it is accusing of infringing. More than two (2) years into this litigation Plaintiff readily (and surprisingly) admitted to the Court that it could not identify a single purportedly infringing product. This is precisely why Federal Circuit authority requires a patent plaintiff conduct a reasonable pre-suit investigation to identify patent claims at issue and identify products that supposedly infringe them. Plaintiff conducted no pre-suit analysis, failed to respond to numerous pre-Rule 11 letters outlining precisely what Plaintiff needed to do, and multiplied these proceedings in order to burden Defendants with frivolous litigation.

**Plaintiff's Infringement Claims Have No Merit**

The Court need not actually address the merits of Plaintiff's patent infringement claims, as Plaintiff has readily admitted that it conducted no pre-suit investigation, let alone a sufficient one. But had Plaintiff competently performed such an investigation, it would have realized it has no infringement claim to bring against Defendants.

**1. The '812 Patent**

A number of limitations from the asserted claims of the Patents-in-Suit are glaringly absent from Gauzy's SPD controllers. For example, Claim 1 of the '812

Patent recites the following:[3]

> 1. A system for use with at least one SPD, the SPD having a variable opacity, the system comprising:
>
> at least one controller connected to the at least one SPD and comprising means controlling the opacity of the at least one SPD;
>
> **at least one master controller issuing commands to the at least one controller**;
>
> wherein the at least one controller **further comprises a network interface which is communicatively coupled to a multiplicity of controllers having network interfaces**.

*See* **Exhibit D**, '812 Patent. Thus, Claim 1 of the '812 Patent requires "at least one controller" that receives commands from a master controller, and that the "at least one controller" has a network interface which is coupled to multiple other controllers that also have network interfaces. Gauzy's controllers simply do not do this.

First, Gauzy's products do not include any "master" controller as critically required by Claim 1 of the '812 Patent. Plaintiff acknowledges this in its Infringement Contentions, explaining that some third-party product (a "smart home system" would be the "master controller"):

> Gauzy's controllers are "[s]mart home system/dry contact/DMX/RS-485 ***compatible*** for easy connection to automation systems." A smart home system is an example of "at least one master controller" that issues command to the controller.

**Exhibit E**, Plaintiff's Infringement Contentions, at 5 (emphasis added). This is just a simple recognition that Gauzy's product does not include all of the elements of this claim, and thus cannot possibly infringe it. Plaintiff cannot simply combine Gauzy's SPD controller with other third-party systems in order to piece together a

---

[3] The emphasized limitations are those missing from Gauzy's products.

supposed infringement claim.

Second, Plaintiff points to the "output channels" of Gauzy's "MultiPlex" controller as being the alleged "network interface," and states that "[t]hese output channels can serve as connection points between the MultiPlex controller and an external network of additional MultiPlex controllers." Exhibit E, Plaintiff's Infringement Contentions at 6. Plaintiff's understanding of Gauzy's controller is simply not correct. Gauzy's MultiPlex controller is not connected to other controllers via the output channels, nor has Plaintiff provided any evidence showing that two or more MultiPlex controllers are connected via the output channels. This is because Gauzy instead uses the output channels to connect its controller with the SPDs (e.g., SPD glass panels) themselves, not other controllers. Gauzy's MultiPlex controller **does not** include any "network interface."

**2. The '154 Patent**

The claims of the '154 Patent each require a "fixed intensity light source and photo-detector combination" "used to determine the absolute opacity" of an SPD. *See* **Exhibit F**, '154 Patent. Gauzy's products do not have such components or feature. Plaintiff has admitted that Gauzy's products do not have this feature and merely states in its Infringement Contentions that Gauzy knows or has reason to know how to utilize this feature in its products without providing any evidence to support this statement. Exhibit F, Plaintiff's Infringement Contentions at 27 ("For example, Gauzy utilizes or knows or has reason to know to utilize a fixed intensity light source and photo-detector combination to determine the absolute opacity of the LCG® SPD Smart Glass.").

### 3. The '509 Patent

The claims of the '509 Patent each require the controllers be "capable of sending a message containing an opacity value." *See* **Exhibit G**, '509 Patent. Gauzy's products only receive commands, they do not send any commands to allow multiple SPD controllers to communicate and adjust opacity levels in relation to other SPDs. Gauzy's products instead use a single controller that is used to control one or multiple SPDs. There is no use or reliance on multiple controllers that are coupled to each other in order to control multiple SPDs within a grid or mesh network.

**Even If Plaintiff Could Identify an Accused Product, RFI Has a Worldwide License**

There is no dispute that Plaintiff has not identified any accused products. There is no dispute that Plaintiff is still to this day unable to identify any accused products. As explained above, this is more than sufficient to impose sanctions for Plaintiff's failure to investigate its patent claims. But Plaintiff's failure is even worse. Plaintiff also failed to investigate RFI's claim that it has a worldwide license to the Patents-in-Suit.

As the parties agree, the Master License Agreement between RFI and non-party SCSC had the following termination provision:

> **10.4 Effect of Termination.** If this Agreement expires or is terminated for any reason whatsoever, in addition to any other remedies which one party may have against the other:
>
> * * *
>
> (3) if this Agreement is terminated for any reason or expires, upon such termination or expiration, [SCSC] will …

> (B) grant to [RFI] a nonexclusive, royalty-free, irrevocable, worldwide license with the right to grant sublicenses to others to utilize all technical information, improvements and/or modifications (whether or not the subject of patents or pending patent applications) developed or invented by or on behalf of [SCSC] and/or its sublicensees, subcontractors, or agents hereunder through the date of such termination or expiration of this Agreement relating to Light Valves, or Licensed Products, …

*Id*. at ¶ 10.4. As clearly set forth in ¶ 10.4, and as previously recognized by the Court:

> Plainly stated, the MLA's Termination provision offered SCSC two options upon termination of the MLA, either: (1) sell its business to a third party to continue to make the Licensed Products, or (2) grant RFI a "nonexclusive, royalty-free, irrevocable, worldwide license with the right to grant sublicenses to others to utilize all technical information, improvements, and/or modifications . . . relating to Light Valves, **or** Licensed Products." (Dkt. 38-4 at 11)

[Dkt. 61] at 4 (emphasis added). Plaintiff sought to get around this clear language by pursuing a declaratory judgment count, claiming there was ambiguity in the interplay between "Licensed Products" in the termination provision and its definition in the Master License Agreement. As the Court explained in denying Defendants' Motion to Dismiss the Second Amended Complaint, "the Court must decide whether the MLA grants RFI either (i) an all-inclusive sublicense to every SPD patent, or (ii) a limited sublicense to electronics that operate products incorporating a light valve, but not the underlying products themselves. (Id. at ¶ ¶ 65-66)". [Dkt. 61] at 5.

But with this clear guidance from the Court, Plaintiff did not address this at all through this litigation or in its summary judgment briefing. Instead, it simply ignored the controlling language of the termination provision, namely that SCSC

granted RFI a worldwide right to grant sublicenses to others to utilize all technical information, improvements and/or modifications developed by SCSC ***relating*** to Light Valves **or** Licensed Products. All of the technology of the Patents-in-Suit is technology relating to Light Valves and thus RFI has a worldwide license to it. And since it has a license, it cannot be liable for patent infringement. Nor can its customers be liable for licensing technology from RFI. Copies of the relevant documents were provided by RFI to Plaintiff's CEO and to Plaintiff's law firm prior to their commencing this suit. The existence of these documents was something they were aware of before bringing this litigation.

**Plaintiff Has Multiplied These Proceedings**

Plaintiff's original Complaint asserted claims of infringement of a single patent, namely the '154 Patent, against Gauzy and Vision Systems, and a count of induced infringement against Research Frontiers, Inc. Defendants moved for dismissal, explaining that Plaintiff "fails to properly plead patent infringement claims." *See* [Dkt. 30] at 5. Defendants additionally sent their first Rule 11 letter to Plaintiff for filing a patent infringement lawsuit without conducting any (let alone a proper) pre-suit investigation. *See* **Exhibit H**, First Rule 11 Letter to Plaintiff, April 16, 2021.

Plaintiff responded by filing its Amended Complaint, where it dropped Vision Systems as a party and dropped its patent infringement claims. *See* [Dkt. 31]. One would think that Defendant's First Rule 11 letter worked as the rules envisioned, with Plaintiff recognizing it could not pursue such a claim and seeking

to rectify this failure by pursuing only its contractual and declaratory action claims. But sadly, this was not the case.

Defendants sought dismissal of the Amended Complaint, arguing that "Plaintiff continues to pursue a claim based on some unknown position that Plaintiff has some patent rights for which Plaintiff cannot articulate any violation." *See* [Dkt. 34] at 5. The Court granted Defendants' dismissal motion. Plaintiff then filed its Second Amended Complaint, reinjecting not only the '154 Patent, but two (2) additional patents, namely the '812 Patent and '509 Patent. Because Plaintiff had no basis to assert patent infringement claims, Defendants sent their second Rule 11 letter to Plaintiff on January 18, 2022. A copy of that letter is attached as **Exhibit I**.

It is notable that Plaintiff briefly engaged experienced patent litigation counsel, namely the K&L Gates firm. *See* [Dkt. 56]. But after these first 2 Rule 11 letters were provided to them, they sought withdrawal, which the Court granted. *See* [Dkt. 74]. As explained in their withdrawal motion, "Peter Ticktin, on behalf of the Ticktin Law Group, notified K&L Gates that it consented to K&L Gates' withdrawal and that Plaintiff has consented as well." [Dkt. 73] at 2.

Plaintiff has admitted that it has not conducted any pre-suit investigation comparing any of the claims of any of the Patents-in-Suit to any products made, used, or sold by either Defendant. And, as explained above, Plaintiff expressly admitted to the Magistrate Judge that Plaintiff is not aware of a single purported infringer. *See* [Dkt 100] Court Transcript February 6, 2023, at 6:18-24. In light of this clear admission, Defendants sent their third Rule 11 letter, and proposed that

Plaintiff dismiss its patent infringement claims, leaving only its contract claims at issue. That third letter is attached as **Exhibit J**. Plaintiff initially agreed to do so, but then backtracked when the parties could not agree as to whether dismissal should be with or without prejudice. But Plaintiff's admission that it has no basis to pursue infringement claims further demonstrates Plaintiff's failure to conduct a pre-suit analysis warranting appropriate sanctions.

**4. The Court Should Impose Rule 11 Sanctions**

If Plaintiff had conducted the appropriate pre-suit investigation, it would have easily been able to purchase one of Gauzy's SPD controllers for examination, or simply attended one of many trade shows where Gauzy (or Vision Systems) were exhibitors, and determine that its patent infringement claims against RFI and Gauzy are without merit. Or it simply could have asked if the Gauzy or Vision Systems controllers had the functionality needed to come within the Patents-in-Suit as discussed above. Courts take the pre-suit investigation requirement in patent cases seriously and have imposed sanctions for failing to ask for technical information prior to instituting suit, failing to obtain an independent infringement opinion from counsel, and failing to attempt to reverse engineer the accused product. *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997); *see also View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 985-986 (Fed. Cir. 2000) (Federal Circuit explicitly recognizing that failure to conduct any analysis is a basis for sanctions under Rule 11.).

Nonetheless, Plaintiff's Infringement Contentions and various discovery responses make it clear that it cannot identify any accused RFI or Gauzy product

that incorporates all of the limitations of any claim of the Patents-in-Suit. Defendants have communicated this numerous times to Plaintiff and its counsel by repeatedly sending Rule 11 letters outlining Plaintiff and its counsel's duty to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted. Plaintiff and its counsel have not satisfied their duty and, thus, should be subject to Rule 11 sanctions imposed by this Court.

### B. Plaintiff Did Not Conduct a Reasonable Pre-Suit Investigation into its Contract Claims

Plaintiff did not conduct an adequate pre-suit investigation into its claims that Plaintiff should be permitted to stand in the shoes of non-Party SCSC to obtain the contractual benefits SCSC enjoyed through RFI's agreement to share the Daimler royalties with SCSC. Plaintiff asserts it has stepped into SCSC's shoes to receive SCSC's contractual rights under two (2) different theories, neither of which has merit. First, Plaintiff argued that it had a power of attorney from SCSC that permitted Plaintiff to self-deal in SCSC's contract rights. But as Plaintiff now admits, it had no such power of attorney (and a reasonable pre-suit analysis would have easily demonstrated this). This specific point was also pointed out to Plaintiff's CEO by RFI at least as early as 2019, and was also pointed out to Plaintiff's counsel prior to this lawsuit. Next, Plaintiff claims that its security interest in SCSC's defined "Collateral" must have also transferred SCSC's contractual rights to Plaintiff. But again, had Plaintiff conducted a reasonable pre-

suit investigation, it would have discovered that Plaintiff's own documents demonstrate conclusively that SCSC's contractual rights were not a part of the "Collateral," and instead Plaintiff would need RFI's agreement to share any royalties with Plaintiff.

As explained in RFI's Motion for Summary Judgment [Dkt. 107] at 11-12, 19, Plaintiff initially relied on an ineffective power of attorney suggesting it could self-deal SCSC's contractual rights under the 2014 Letter Agreement through the Purported GGT-SCSC Assignment Agreement. Plaintiff has since agreed that Defendant's reasoning nullifies Plaintiff's power of attorney argument—although it should have been clear from the plain language of the Consent Agreement that the power of attorney was ineffective. *See* [Dkt. 117] at 7 ("In preparing [Plaintiff's Summary Judgment Response], after [RFI] submitted a convincing argument which nullified the Power of Attorney…"); *see also* [Dkt. 114] at 4 ("RFI states … that there is no valid power of attorney directed to any contractual rights SCSC had under the 2014 Letter Agreement and gave good reason for that conclusion. RFI's point is well taken. However, the Power of Attorney is irrelevant."). In Plaintiff's own words, "GLOBAL now agrees that it was invalid." [Dkt. 114] at 4. Thus, by Plaintiff's own recognition, it has no interest in the 2014 Letter Agreement by way of the Purported GGT-SCSC Assignment Agreement. Nonetheless, Plaintiff still chose to pursue, and maintain, its breach of contract claims[4]. *See*

[4] Indeed, Plaintiff further multiplied these proceedings by copying and pasting arguments relating to its defunct power of attorney claim ***after*** Plaintiff admitted that the power of attorney was invalid. *See* [Dkt. 115] at 13.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (The Eleventh Circuit finding that Rule 11 sanctions are appropriate "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.") (internal quotation and citation omitted).

Having admitted that the purported power of attorney was ineffective, Plaintiff now suggests that SCSC's contractual rights under the 2014 Letter Agreement were indeed transferred to GGT as part of a 25-page attachment to the Consent Agreement (the "Document"). *See* [Dkt. 113] at 8. Although the Document is still fatal to Plaintiff's claims, Plaintiff never made any attempt to disclose or produce this Document prior to using it in its Summary Judgment Reply brief. And it's hard to believe that Plaintiff could so clearly forget to mention the existence of a document that Plaintiff itself now argues is material to its contract claims. Even worse, Plaintiff's counsel readily (and surprisingly) admitted that he never looked at the Document prior to filing this lawsuit as part of his pre-filing inquiry despite Mr. Lloyd having the Document in his position the entire time. *See* **Exhibit K**, Email from Mr. Ticktin to Mr. Pollack Jul. 1, 2023 at 4:33pm. The Post-Default Consent Agreement that transferred rights to Plaintiff is not a complicated legal document, and clearly explains that the assets that will be transferred to Plaintiff are those assets that are defined in the "Document":

> Within ten (10) days after both parties execute this Post-Default Consent, SPD will provide an asset transfer document (the "Document") which details **<u>all of the assets being transferred</u>** to [Plaintiff].

Post-Default Consent Agreement, **Exhibit L** at 1 (emphasis added). Plaintiff executed the Post-Default Consent Agreement and admits to being in possession of the "Document" the entire time. It was incumbent on Plaintiff and its counsel to investigate its contract claims before pursuing them. Investigating those claims requires analyzing the language of the agreement at issue itself, namely the Document.

Plaintiff's counsel's admission that he did not analyze this document before he signed and filed the Second Amended Complaint is an admission that he did not conduct an adequate pre-suit investigation. Rule 11 requires sanctions for this behavior. *See Engwall v. Tinsley*, No. 8:22-CV-638-WFJ-AAS, 2023 WL 3092620, at *1 (M.D. Fla. Apr. 26, 2023) ("Pursuant to Federal Rule of Civil Procedure 11, '[i]n filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not presented for any improper purpose.'") (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)) (internal quotation marks and citation omitted).

Had Plaintiff conducted a reasonable pre-filing inquiry, it would have recognized the express language of the Document which spells out explicitly that Plaintiff is not getting any right to SCSC's interest in the revenue sharing agreement SCSC has with RFI:

> There is no stipulation in the Daimler contract for royalty payments to come to SCSC.

> There is a separate agreement between RFI and SCSC under which RFI shares the Daimler royalties 50/50 with SCSC. That agreement is not a transferable agreement to a third party. As we have reported numerous times in Emails for more than a year, do not expect RFI to share these royalties with GGT or NewCo or any future owner of the patents. They are under no obligation to transfer this agreement from SCSC. Expect them to retain 100% of the Daimler royalties upon the dissolution of SCSC. We know RFI very well and it can be expected that they will retain 100% of the royalties.
>
> A copy of the RFI/SCSC agreement is in Appendix B to this Asset Transfer Document.

[Dkt. 113-1] at 8. Plaintiff was aware of this clear language prior to filing suit and should have known that its contract claims are moot in view of such language. *Trump v. Clinton*, 2022 WL 16848187, at *3 (S.D. Fla. Nov. 10, 2022) ("'[A] litigant's obligations with respect to the contents ... [of pleadings or motions] ... are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'.") (citing *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996)); *see also Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) ("[T]he reasonable inquiry under Rule 11 is not a one-time obligation. [T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.") (internal quotation marks and citations omitted).

### C. Mr. Ticktin and Ms. Penalta have Previously Been Sanctioned Under Rule 11

Mr. Ticktin and Ms. Penalta have both been sanctioned previously under Rule 11 for their failure to conduct reasonable pre-filing inquiries. On August 9, 2023, Chief Judge Corrigan issued a scathing opinion in which he dismissed numerous cases filed by Ms. Penalta due to her repeated failure to follow this Court's Local Rules. *See GS Holistic, LLC v. Kinder Combs 7 LLC*, 2023 WL 5104701, at *1 (M.D. Fla. Aug. 9, 2023) ("Ms. Penalta has failed to take some action required by the Local Rules of this Court…She has been repeatedly warned. Enough is enough."). Noting the orders by other judges in this District, including Senior Judge Covington and Judge Howard, Chief Judge Corrigan summarized Ms. Penalta's improper conduct as follows:

> Gabrielle Alexa Penalta, counsel for plaintiff in each of the above cases, has been repeatedly advised of the requirement that she follow the Local Rules of this Court. *See, e.g., GS Holistic, LLC vs. Martin & Company, Inc.,* Case No. 3:22-cv-1362-HES-PDB (Docs. 11, 14, 15) (orders and hearing minutes noting Ms. Penalta's failure to follow rules of this Court); *GS Holistic, LLC vs. Venice Smoke Shop #3, Inc.,* No. 3:22-cv-1364-HES-PDB (Doc. 16) (order requiring Ms. Penalta to file a certification that she has read the Local Rules and will comply with them); *IMiracle (HK) Limited vs. Okie Smoky LLC,* Case No. 3:22-cv-1389-MMH-MCR (Doc. 40) (order recounting numerous cases in which plaintiff's counsel, Ms. Penalta, has failed to follow the Local Rules and describing her practice in this Court as "exceedingly careless," warning Ms. Penalta that future violations will carry consequences throughout the district). *See also GS Holistic, LLC vs. Brother Pastor LLC, No.* 8:22-cv-2179-VMC-TGW (Doc. 34) (order granting motion for sanctions based on actions of plaintiff's counsel, Ms. Penalta, including misrepresentations to the Court).

Id., 2023 WL 5104701, at *1. Ms. Penalta has a history of improper conduct and this case is sadly no exception.

In *GS Holistic, LLC v. Brother Pastor LLC*, 2023 WL 4082027 (M.D. Fla. June 20, 2023), Ms. Penalta filed suit to pursue claims for trademark infringement and

unfair competition without conducting any pre-filing inquiry. When issuing sanctions against Ms. Penalta for her conduct, the Court recognized that "[a]t no point did [Ms. Penalta] seek to remedy the blatant factual errors in the complaint. Instead, from October 2022 to March 2023, she continued to pursue a case she knew had no factual or legal basis." *Id.*, 2023 WL 4082027, at *5; *see also id.*, 2023 WL 4082027, at *3 ("Even if counsel had a good faith belief that the claims were sound, sanctions must be imposed if counsel failed to make a reasonable inquiry.").

Likewise, in *Trump v. Clinton*, the Court found that Mr. Ticktin participated in the filing of a frivolous shotgun lawsuit that contained numerous inaccurate factual allegations and misrepresentations. As recognized in that decision, "Rule 11 stresses the need for some prefiling inquiry." *Trump v. Clinton*, 2022 WL 16848187, at *3 (S.D. Fla. Nov. 10, 2022) (internal quotation marks omitted).

**Plaintiff's Counsel Has Amplified These Proceedings**

Plaintiff appears to be driven by vengeance and personal animus of its counsel. Plaintiff has exacerbated its frivolous behavior by amplifying its claims instead of modifying or eliminating them in light of their clear lack of merit. Through meet and confers and other correspondence between counsel, Plaintiff regularly engages in unbecoming name calling directed both at defense counsel and at RFI. Plaintiff's counsel has referred to RFI as dishonest, ripping off innocent investors, and fooling customers, and called counsel dumb, a creep, an ass, a nasty human being, among other vitriol. This behavior is unbecoming to our profession and demonstrates personal animus on the part of Plaintiff's counsel. This bad faith

pursuit of Plaintiff's claims is sanctionable under Rule 11, § 1920, and the Court's inherent power.

## V. CONCLUSION

Our system of justice suffers when frivolous behavior is permitted to go unchecked. Rule 11 and the Court's inherent power is designed to guard against precisely these types of significant harms to our process. This lawsuit is clearly one that should never have been brought and was only brought because of the lack of diligence and adherence to our rules. As such, Plaintiff and its counsel must be sanctioned. And as Fed. R. Civ. P. 11(c) requires, Plaintiff's law firm must be held jointly responsible for the violations committed by Mr. Ticktin and Ms. Penalta.

WHEREFORE, Defendants respectfully request that the Court (1) dismiss Plaintiff's claims with prejudice, (2) impose Rule 11 sanctions on Plaintiff and its counsel, including the imposition of all of Defendants' reasonable attorneys' fees and costs in defending against this frivolous action, and (3) grant any further relief this Court deems fair and proper.

**Fed. R. Civ. P. 11 Certification**

This motion was served on Plaintiff's counsel on August 16, 2023. Plaintiff did not respond to Defendant's notice or take any action to address the deficiencies complained of.

Dated September 7, 2023

*/s/ Woodrow Pollack*
Woodrow H. Pollack
Florida Bar No. 26802
Brian J. Paul
Florida Bar No. 1018684
**Shutts & Bowen, LLP**

4301 W. Boy Scout Blvd.
Suite 300
Tampa, FL 33607
(813) 463-4894
wpollack@shutts.com
bpaul@shutts.com
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2023 a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack